## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IVETTE M. MARTÍNEZ GONZÁLEZ, et als**. | |
| Plaintiffs | **CIVIL NO. 16-2077** |
| v. | |
| **CATHOLIC SCHOOLS OF THE ARCHDIOCESES OF SAN JUAN PENSION PLAN, et als.** | CIVIL ACTION UNDER THE PROVISIONS OF E.R.I.S.A.; PRELIMINARY AND PERMANENT INJUNCTION; TEMPORARY RESTRAINING ORDER |
| Defendants | |

## MOTION TO RENEW MOTION TO COMPEL DISCOVERY AND REQUEST FOR EXTENSION OF TIME TO FILE RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**TO THE HONORABLE COURT**:

  **COME NOW**, the plaintiffs, through their undersigned attorneys and respectfully state and pray:

**I.**  **INTRODUCTION**

  On April 20, 2017, plaintiffs served a First Set of Interrogatories, Request for Production of Documents and Request for Admissions to all Defendants in the instant case.  **See Exhibit 1, Docket No. 123**

  On May 31, 2017, defendants tendered their Answers to these discovery requests.  See **Exhibit 2, Docket No. 123.**

  On June 22, 2017, plaintiffs served a Rule 26 letter to defendants, to object several responses to plaintiffs' requests.  **See Exhibit 3, Docket No. 123.**

On July 18, 2017, the subscribing attorneys held a Local Rule 26 meeting with defendants' counsel to make a reasonable and good faith effort to reach an agreement with opposing counsel as to plaintiffs' objections to defendants' answers to their discovery requests.  The parties reached an agreement on some of plaintiffs' objections.  However, the parties were unable to reach an agreement as to several answers purported by defendants.

Thus, on July 31, 2017, plaintiffs filed a Motion to Compel Discovery and Request for Extension of Time to Respond to Defendants' Second Motion to Dismiss (Docket No. 123).

After the filing of this Motion, plaintiffs and co-defendants, Catholic Schools of the Archdioceses of San Juan Pension Plan and the Superintendence of Catholic Schools of the Archdioceses of San Juan filed a "Joint Informative Motion Regarding Upcoming Meet-and-Confer Meeting." (**Docket No. 140**) Through this Motion, the parties informed the Court that they were to hold a meeting on August 28, 2017, to confer in good faith about a potential out of court solution to plaintiff's motion to compel.

The rest of the defendants did not respond to plaintiffs' Motion to Compel nor did they attend to the aforementioned meeting.

During said meeting, the parties reached several agreements regarding plaintiffs' objetions to defendant's responses to their discovery requests.  These agreements were memorialized in an E-Mail sent by the aforementioned defendants on August 30, 2017.  **See Exhibit 1 of the instant motion.**

As this E-Mail clearly reflects, the parties agreed that defendants would adequately respond to plaintiffs' discovery request in not more than three weeks.

In light of the filing of the Joint Motion (Docket No. 140), on October 10, 2017, this Honorable Court entered an Order denying, without prejudice plaintiffs' Motion to Compel

Discovery (Docket No. 149).   In said order the Court acknowledged that the parties were attempting to resolve their discovery disputes, without the court's intervention.   However, the Court held that the parties may file a Motion as to any unresolved matters.

Several months went by, but defendants failed to comply with the agreements reached by the parties on August 28, 2017, as memorialized in **Exhibit 1.**

Thus, on December 1, 2017, plaintiffs sent an E-Mail to all defendants to once again request appropriate responses to their discovery requests; in strict compliance with the agreements reached by the parties since August 28, 2017; on or before December 4, 2017.   They also admonished defendants that failure to do so would result in the renewal of their Motion to Compel.   **See Exhibit 2 of the instant motion.**

Thus, for the reasons set forth herein, plaintiffs urgently move this Honorable Court to enter an order against all defendants to compel discovery in the instant case and sanction defendants for their contumacious behavior.

## II.   DISCUSSION

Federal Rule of Civil Procedure 26 ("Rule 26") states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).   As long as it is acting within the scope of Rule 26, a party may conduct discovery by, among other things, serving another party with interrogatories, Fed. R. Civ. P. 33 ("Rule 33"), or by making requests for the production of documents, Fed. R. Civ. P. 34 ("Rule 34").   In other words, the scope of discovery under the Federal Rules is very broad.   See Fed.R.Civ.P. 26(b)(1).   Under the liberal standard set forth in that rule, "information

is discoverable if there is any possibility it might be relevant to the subject matter of the action." *EEOC v. Electro–Term, Inc.*, 167 F.R.D. 344, 346 (D.Mass.1996).

When a party resists the production of evidence, it "bears the burden of establishing lack of relevancy or undue burden." *Sánchez–Medina v. UNICCO Service, Co*., 265 F.R.D. 24, 27 (D.P.R. 2009) (Arenas, J.) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp*., 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)). The objecting party "must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (quotation marks omitted).  See also Fed. R. Civ. P. 33(b)(4) (providing that "the grounds for objecting to an interrogatory must be stated with specificity.") (emphasis provided); Fed. R. Civ. P. 34(b)(2)(B) (providing that objections to a request for document production must "state with specificity the grounds" for the objection, "including the reasons.") (emphasis provided). Thus, generalized objections to an opponent's discovery requests are insufficient. See, e.g., *Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354, 358 (D. Md. 2008) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome ... are improper unless based on particularized facts.") (citations and quotation marks omitted); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.")

If "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents ... as requested under Rule 34", the opposing party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

Plaintiffs' Request No. 2, reads as follows:

"2.     Submit copies of any and all documents pertaining the establishment of the Catholic Schools of the Archdioceses of San Juan Pension Plan Pension ("the Plan") including, but not limited to, Plan Document, Deed of Trust, Minutes of the meetings of Trustees to establish the Plan, Plan Summary, etc."

Defendants's Response was the following:

Interrogatory No. 2 is objected because it is overly broad, vague and ambiguous.

Without waiving said objection it must be noted that Plaintiffs already have a copy of the following documents:

a. Trust Deed No. 12, issued on November 26, 1979 before the Notary Public Antonio Suarez de la  Torre.

b. Plan Document of Archdiocese of San Juan Pension Plan.

c. Pastoral Letter of the Episcopal Conference.

d. Catholic Directory.

e. DOL Opinion No. 85 - 32A, signed by Elliot Daniel, Acting Assistant Administrator for Regulations and Interpretations.

f. Letters issued by the PBGC regarding coverage of Title IV of ERISA in Puerto Rico.

g. Letter issued by the U.S. Department of Treasury on May 27, 2016 regarding tax exempt status of the Roman Catholic  Church.

Plaintiffs objected this response because it was non-responsive, inasmuch as defendants failed to produce the minutes of the meetings of the trustees to establish the plan.  **See Exhibit 3, page 6.**  During the meeting held on July 18, 2017, defendants argued that said minutes are irrelevant to the threshold issue that this Honorable Court has to address and indicated that they were not going to produce these minutes.

Plaintiffs understand that the requested documents are clearly relevant to issue at hand, inasmuch as these documents should reflect whether or not it was the intention of the Superintendence to establish a plan covered by ERISA.  After all, as plaintiffs indicated in the Rule 26 letter served to defendants on June 22, 2017, in the case of *Curtiss-Wright Corporation v. Schoonejongen,* 514 U.S. 73, 83 (1995), the Supreme Court of the United States held the following:

"....[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and

obligations at any time. But ERISA already has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents.

**The basis of that scheme is another of ERISA's core functional requirements, that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(l) (emphasis added). In the words of the key congressional report, " [a] written plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan."** H.R.Rep. No. 93-1280, p. 297 (1974) U.S. Code Cong. & Admin. News pp. 4639, 5077, 5078 (emphasis added). ERISA gives effect to this "written plan documents" scheme through a comprehensive set of "reporting and disclosure" requirements, see 29 U.S.C. §§ 1021-1031, of which § 402(b)(3) is not part.  One provision, for example, requires that plan administrators periodically furnish beneficiaries with a Summary Plan Description, see 29 U.S.C. § 1024(b)(l), the purpose being to communicate to beneficiaries the essential information about the plan. Not surprisingly, the information that every SPD must contain includes the "name and address" of plan administrators and other plan fiduciaries, but not the names and addresses of those individuals with amendment authority. § 1022(b).  The same provision also requires that plan administrators furnish beneficiaries with summaries of new amendments no later than 210 days after the end of the plan year in which the amendment is adopted. See § 1024(b)(1). Under ERISA, both Summary Plan Descriptions and plan amendment summaries "shall be written in a manner calculated to be understood by the average plan participant."§ 1022(a)(l)."

According to the original Deed of Trust known as Catholic Schools Employees' Pension Plan (Deed Number 12, notarized on November 26, 1979, by Notary Public Antonio J. Suarez de la Torre), the trustees shall discharge their duties with respect to the plan and this Trust solely in the interest of the participants and their beneficiaries pursuant to the terms and conditions of the Plan and this Trust, **inasmuch as these terms and conditions are congruent with the provisions of Title** I **of the Employee Retirement Income Security Act of 1974 (herein after, "E.R.I.SA.")**

Pursuant to the deed of trust, the trustees of the plan have to pay a bond, subject to the provisions of Section 412 of the ERISA (29 U.S.C. §1112).  **See Docket No. 27-7**

After subscribing the aforementioned deed, the fiduciaries of the Catholic Schools of the Archdioceses of San Juan Pension Plan approved the same. Article 2 (Terms and Conditions of the Plan) provides that:

A. Purposes: This plan has been established by the Sponsor of the Plan for the exclusive benefit of the employees of the participating employers and/or their beneficiaries. Inasmuch as it is possible, this document shall be interpreted and administered **in a consistent manner with the intention and requirements of the applicable provisions of the "Employees Retirement Income Security Act of 1974," as amended (ERISA)** and the Income Tax Law of 1954 of the Commonwealth of Puerto Rico, as amended, or any future provision of any applicable law.

Article 18 (Termination of the Plan) provides the following:

A. The sponsor reserves the right to terminate this plan completely at any moment, for any reason, or without any reason with the previous approval of the Secretary of the Treasury and **the Pension Benefit Guarantee Corporation,** and also the majority of the participating employers.

And Article 21 (Miscellaneous Provisions of the Plan), provides the following:

0. This Plan and all its provisions shall be interpreted pursuant to the laws of the Commonwealth of Puerto Rico and the **Employee Retirement Income Security Act of 1974 [E.R.I.S.A.].** The Retirement Committee, in any form, would be held accountable in any state or federal court with jurisdiction, if it has the power to act.

**See Docket No. 27-4.**

After the approval of the plan, the Superintendence of Catholic Schools of the Archdioceses of San Juan published and distributed among the beneficiaries and participants of the plan a document titled "Catholic Schools Employees' Pension Plan of the Archdioceses of San Juan, Summary of the Description of the Plan."

Said document provides, in its paragraph number 26 (Notice to Employees) the following:

As a participant of this plan, you have certain rights and protections under the "Employee Retirement [Income] Security Act of 1974. E.R.I.S.A." provides that the participants of the plan would have the following rights:

a.  To examine, without any cost, in the office of the administrator and other places, all the documents of the plan, including the insurance contracts, collective bargaining agreements and copy of all the documents submitted to by the plan to the Department of Labor of the United States, such as annual reports and description of the plan.

b.  To obtain copy of a detail version of the document of the plan or other information, through a written request address to the administrator of the plan. The administrator could collect a reasonable amount for photocopying expenses.

c.  To receive a summary of the annual financial report of the plan. The law requires that the administrator of the plan provide a copy of this report to each participant.

d.  To obtain, once per year, one report of the total accumulated pension benefits and the non-forfeitable pension benefits (if there are any) on the closet date on which the benefits would become non-forfeitable. The plan could require that the report be requested in writing, but it must be furnished at no cost.

e.  To file a complaint in Federal Court, if any of the requested documents are not received within 30 days counted from the date in which they are requested by the participant, unless the materials are not sent for reasons beyond the control of the administrator. The Court could require that the administrator of the pay up to $100.00 for each day of delay until these materials are received by the participant.

In addition to establish rights for the participants of the plan, E.R.I.S.A. imposes obligations to the persons responsible for the operation of the pension plan. These persons are known as "fiduciaries" pursuant to the law. The fiduciaries are obliged to act exclusively for the benefit of the participants and must act prudently when they make decisions and exert duties under the plan. The fiduciaries that violate the rules imposed by ERISA could be replaced and could respond for any loss caused in detriment of the plan due to their acts.

Your employer could not discriminate against you to prevent that you enjoy a pension benefit, or to exercise a right under the rules of ERISA.

If any benefit is denied to you in an improper manner you have the right to file a complaint in Federal Court or in a State Court. If the fiduciaries are misusing the funds of the plan, you have the right to file a complaint in Federal Court or to request the intervention of the Department of Labor of the United States. If you win the case, the Court could, if it decides to, request to the defendant to pay the legal costs, including attorney's fees.  If you lose the case, the Court could require that you pay the legal costs, including attorney's fees (for example, if the Court decides that your claim is frivolous).

**See Docket No. 66-1.**

Another document with a similar title, dated September 1, 1993, was published and distributed among the plan participants and beneficiaries by the Superintendence of Catholic Schools of the Archdioceses of San Juan, which contain identical provisions.

A similar document was published on the Internet by the Superintendence.

Plaintiffs understand that these documents gather the duties and obligations assumed by the settlor of the plan with the plan participants and beneficiaries. Defendants cannot claim that the plan is excluded from the provisions of ERISA because the content of the aforementioned documents belly their argument. As stated in *Curtiss-Wright,* "ERISA... has an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around **reliance on the face of written plan documents.**"

If the settlor of the plan failed to comply with the provisions of ERISA while it was administering the plan subject of this lawsuit, it cannot penalize the participants and beneficiaries for its legal breach.

Plaintiffs' Request No. 3 indicated the following:

3.      Submit copy of all the Plan Summaries sent to the Plan participants and/or beneficiaries since the establishment of the Plan up to the present.

Defendants' Answer to Request No. 3 was the following:

3.      Interrogatory No. 3 is objected because the question presented is not relevant to the limited discovery allowed in the case at bar. The Honorable Court allowed discovery in relation to the threshold issue of whether the pension plan is a church plan under ERISA, as indicated in the Second Amended Complaint.

Plaintiffs objected Answer to interrogatory number 3 not only as non-responsive but because it incorrectly objects the production of extremely relevant documents and well within the scope of the limited discovery set by the court in the instant case.  See Exhibit 3, at page 6. Plaintiffs understand that the doctrine set forth by the Supreme Court in the case of *Curtiss-Wright,* supra. clearly establish the relevance of the requested documents.

Plaintiffs' request No. 5 reads as follows:

5.      Submit the names and addresses of all the Trustees, fiduciaries and Administrators of the Plan since 1979 to present.

Answer to interrogatory number 5 was objected as non-responsive. The names of the trustees and administrators of the plan are clearly relevant to the limited discovery allowed in the case at bar.

Defendants submitted a list of the trustees of the plan, but failed to name the administrators of the plan and the addresses of both the trustees and administrators.  **See Exhibit 4, Docket No. 123.**[1]

Plaintiffs' request No. 8 reads as follows:

8.      Submit the name and addresses of all the participating employers of the Plan. For all the participating employers, please include the names of the members of their Board of Directors since 1979 to the present.

Plaintiffs objected answer to request number 8 not only as non-responsive but because it incorrectly objects the production of extremely relevant documents and well within the scope of

---

[1] This Document was produced by defendants in the Spanish language.  Plaintiffs understand that this Honorable Court must order defendants to submit a certified translation of the same.

the limited discovery set by the court in the instant case.   Plaintiffs understand that this information is relevant inasmuch as defendants indicate in their most recent Motion to Dismiss (Docket No. 117) that Exhibit 1 of that Motion ("Letter dated May 27, 2016 issued by the IRS for the United States Conference of Catholic Bishops, Group Exemption No. 0928), proves that the participating employers of the Catholic Schools of the Archdioceses of San Juan Pension Plan are exempt from Federal Income Tax under Section 501(c)(3) since 1946.   Defendants contend that plaintiffs have not refuted this fact.  Defendants assertion is completely false.

The document, directed to the United States Conference of Catholic Bishops, itself warns that [i]t is not to be used by any other organization in the group ruling for any purpose. Furthermore, the alleged exempt status of the organizations is based on the U.S. Conference of Catholic Bishops representations.   Plaintiffs and this Honorable Court ignore what were the representations made to the IRS by the United States Conference of Catholic Bishops.   In any event, it is well settled law in this Circuit that IRS General Counsel Memoranda "are not authority in this court." *Tupper v. United States*, 134 F.3d 444, 448 (1st Cir. 1998).  Defendants have not presented any evidence or legal argument to prove that the aforementioned letter is admissible for the purpose for which it was offered nor that each of the participating employers complied with the requirements set forth by the IRS in order to be considered a tax-exempt organization pursuant to Section 501(c)(3) of the Internal Revenue Code.

According to the IRS Pub. No. 4573, in order to include the participating employers in the aforementioned group tax exemption, the U.S. Conference of Catholic Bishops has to comply with the following requirements:

The central organization submits a letter to the IRS on behalf of itself and its subordinates. The letter includes:

a.      Information verifying the existence of the required relationship;

b.      A sample copy of a uniform governing instrument (such as a charter, trust indenture, articles of association, etc.) adopted by the subordinates;

c.      A detailed description of the purposes and activities of the subordinates including the sources of receipts and the nature of expenditures;

d.      An affirmation by a principal of officer that, to the best of the officer's knowledge, the purposes and activities of the subordinates are as set forth in (b) and (c) above;

e.      A statement that each subordinate to be included in the group exemption letter has furnished written authorization to the central organization;

f.      A list of subordinates to be included in the group exemption letter to which the IRS has issued an outstanding ruling or determination letter relating to exemption;

g.      If the application for a group exemption letter involves IRC 501(c)(3), an affirmation to the effect that, to the best of the officer's knowledge and belief, no subordinate to be included in the group exemption letter is a private foundation as defined in IRC 509(a);

h.      For each subordinate that is a school claiming exemption under IRC 501(c)(3), the information required by Rev. Proc. 75-50, 1975-2 C.B. 834 and Rev. Rul. 71-447, 1971-2 C.B. 230; and

i.      A list of the names, mailing addresses (including zip code), actual addresses (if different), and employer identification numbers of subordinates to be included in the group exemption letter. A current directory of subordinates may be furnished in lieu of the list if it includes the required information and if the subordinates not to be included in the group exemption letter are identified.

The rules for applying for a group exemption are set forth in Rev. Proc. 80-27, 1980-1 C.B. 677.

Moreover, a group exemption letter does not change the filing requirements for exempt organizations.  The central organization and the subordinates must file Forms 990 (or 990-EZ), unless they meet a filing exception. If it is required to file an annual return, the central organization must file its own separate return but may also file a group return on behalf of some or all of its subordinates.  If the central organization files on behalf of some of its subordinates, rather than all, it must attach a list of the subordinates included in the return.

Defendants have not submitted a single piece of evidence to demonstrate that the participating employers complied with the IRS requirements in order to be considered a subordinate tax exempt organization, pursuant to Rule 501(c)(3).

See **Docket 60-2** (IRS Publication No. 4573 (Rev. 6-2007) Catalog No. 46351Q; **Docket No. 60-3** (Rev. Proc. 75-50, 1975-2 C.B. 587) and **Docket No. 60-4** (Rev. Rul. 71-447, 1971-2 C.B. 230).

Plaintiffs need to know the names of all the participating employers to determine if all of them complied with the requirements set forth by Section 501, in order to be considered tax exempt organizations.  The fact that a "plan" is sponsored by a "church" does not necessarily means that the plan may safely be called a "church plan," as defined in Section 3(33) of E.R.I.S.A., 29 U.S.C. §1002(33)(A).  Even the basic definition of a "church plan" which is set forth in Section 3(33)(A) of E.R.I.S.A. extends the complexity of the analysis beyond simply finding a "church" and looking for a "plan."  Section 3(33)(A) imposes the additional requirements that the sponsor of a plan must be a "church" or association of churches" exempt from taxation under Section 501 of the  Code and the plan be maintained (within certain limits) for the benefit of the church's employees.

ERISA provides that a person is an "employee of a church or a convention or association of churches" if the person is "an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of [the Internal Revenue Code] and which is controlled by or associated with a church or a convention or association of churches." 29 U.S.C. § 1002(33)(C)(ii).  In the instant case plaintiffs alleged that most, if not all of the participating employers failed to request exemption from taxation under Section 501 of the Internal Revenue Code.  As of today, defendants have not presented any admissible evidence to refute this fact.

Plaintiffs request no. 13 reads as follows:

13.     Please state any and all the names and addresses of those investment brokers or wealth managers acting as fiduciaries of the Pension Plan of the Superintendence of Catholic Schools of the Archdioceses of San Juan, who provided investment advice for a fee to the administrators and other fiduciaries of the Plan, as the term is defined by 29 U.S.C. §1002(21)(A)(ii).

Defendants answer to this discovery was the following:

Interrogatory No. 13 is objected because it is based on the false and incorrect premise that the entities included in the Interrogatory acted as fiduciaries or provided investment advice under ERISA.  Without waiving said objection, we can state that the money managers were UBS and Popular Securities.

Answer to interrogatory number 13 was objected by plaintiffs as non-responsive. Plaintiffs do not have to accept at face value that the individuals who invested the money of the pension fund did not provide investment advice for a fee.   That is something that plaintiffs are entitled to corroborate. Moreover, a corporation acts through its officers, agents and employees. An investment company cannot provide investment advice for a fee by itself.  See **Exhibit 3 of Docket 123, page 6.**

In the Second Amended Complaint plaintiffs named the investment brokers or wealth managers that acted as fiduciaries of the Pension Plan of the Superintendence of Catholic Schools of the Archdioceses of San Juan, who provided investment advice for a fee to the administrators

and other fiduciaries of the Plan, as the term is defined by 29 U.S.C. §1002(21)(A)(ii); with fictitious names. Part of the limited discovery ordered by this Honorable Court was directed to identify the defendants who were named with fictitious names. However, during the parties Local Rule 26 meeting defendants insisted that plaintiffs should have amended the complaint to include the investment companies and request this information to these companies. As this Honorable Court probably recalls, this is precisely what plaintiffs and the Court would like to prevent. That successive and interminable amended complaints are filed. Defendants cannot control the proceedings in the instant case, as they pretend with their unsustainable position. Defendants are clearly hampering plaintiffs' ability to amend their pleadings within the time frame allotted by the court, by means of frivolous objections to plaintiffs' discovery requests.

Plaintiffs requests number 14 and 15 reads as follows:

14.    Please provide copies of the all the documents submitted to or received from the Pension Benefit Guarantee Corporation from 1979 until the present, by the Catholic Schools of the Archdioceses of San Juan Pension Plan and/or the Superintendence of Catholic Schools of the Archdioceses of San Juan.

15.    Please provide copies of the all the documents submitted to or received from the Labor Department of United States from 1979 until the present, by the Catholic Schools of the Archdioceses of San Juan Pension Plan and/or the Superintendence of Catholic Schools of the Archdioceses of San Juan.

Interrogatory No. 14 is objected because the question presented is not relevant to the limited discovery allowed in the case at bar, The Honorable Court allowed discovery in relation to the  threshold  issue of whether  the pension  plan is a church plan under ERISA, as indicated in the Second Amended Complaint.

Interrogatory No. 15 is objected because the question is broad, ambiguous and vague. Also, the information requested is not relevant to the case at bar.

Answer to interrogatories number 14 and 15 were objected as non-responsive. Whether the Catholic Schools of the Archdioceses Pension Plan submitted to or receive documents from the PBGC and Labor Department is a fact clearly relevant to the church plan exemption issue. **See Exhibit 3, page 6.** In the first place, only plans covered by ERISA

have to comply with the payment of premiums to the PBGC.  Obviously, if the plan ever paid

such premiums to the PBGC is a fact clearly relevant to issues at hand.  Also, any

correspondence between the PBGC and the settlor and sponsor of the plan could help to

establish that the subject plan is covered by the provisions of ERISA.  Moveover, Article 18

of the Pension Plan Document clearly establish that in order to terminate the subject plan

requires the previous approval of the Secretary of Treasury and/or the PBGC, as well as the

majority of the participating employers.  Since defendants decided to terminate the plan, any

communication between the PBGC and the settlor of the plan regarding the termination of the

plan is relevant to determine it if such settlor complied with the provisions of the plan itself.

On the other hand, the three federal agencies responsible for administering ERISA are the

Internal Revenue Service, the Department of Labor and the PBGC.  See *Advocate Health Care*

*Network v. Stapleton*, 581 U.S. _____ (2017).  The Employee Benefits Security Administration

(EBSA), ascribed to the Department of Labor, provides compliance assistance to settlors and

sponsors of a pension plan, including voluntary compliance programs, advisory opinions, and

publications.  Thus, any correspondence between the Labor Department and the settlor of the plan

is clearly relevant to the issue at hand.

17.    In your Answer to Second Amended Complaint you contend that the Catholic
Schools of the Archdioceses of San Juan Pension Plan is a church plan exempt from the provisions
of ERISA.  If that is the case, please explain why the Deed of Trust known as Catholic Schools
Employees Pension Plan (Deed Number 12, notarized on November 26, 1979, by Notary Public
Antonio J. Suárez de la Torre), indicates that the trustees shall discharge their duties with respect
to the plan and this Trust solely in the interest of the participants and their beneficiaries pursuant
to the terms and conditions of the Plan and this Trust, inasmuch as these terms and conditions are
congruent with the provisions of Title I of the Employee Retirement Income Security Act of 1974
( "E.R.I.SA.")); and why such deed of trust, indicate that the trustees of the plan have to pay a bond,
subject to the provisions of Section 412 of the ERISA (29 U.S.C. §1112).

18.    In the same vein, if the subject plan is a church plan exempt from the provision of
ERISA, please explain why the plan document indicates the following:
Article 2 (Terms and Conditions of the Plan) provides that:

A.      Purposes: This plan has been established by the Sponsor of the Plan for the exclusive benefit of the employees of the participating employers and/or their beneficiaries.

Inasmuch as it is possible, this document shall be interpreted and administered in a consistent manner with the intention and requirements of the applicable provisions of the "Employees Retirement Income Security Act of 1974," as amended (ERISA) and the Income Tax Law of 1954 of the Commonwealth of Puerto Rico, as amended, or any future provision of any applicable law.

Article 18 (Termination of the Plan) provides the following:

A. The sponsor reserves the right to terminate this plan completely at any moment, for any reason, or without any reason with the previous approval of the Secretary of the Treasury and the Pension Benefit Guarantee Corporation, and also the majority of the participating employers.

And Article 21 (Miscellaneous Provisions of the Plan), provides the following:

O.      This Plan and all its provisions shall be interpreted pursuant to the laws of the Commonwealth of Puerto Rico and the Employee Retirement Income Security Act of 1974 [E.R.I.S.A.]. The Retirement Committee, in any form, would be held accountable in any Court other than a state or federal court with jurisdiction, if it has the power to act.

19.      By the same token, if the subject plan is a church plan exempt from the provisions of ERISA, please explain why after the approval of the plan, the Superintendence of Catholic Schools of the Archdioceses of San Juan published and distributed among the beneficiaries and participants of the plan a document entitled "Catholic Schools Employees' Pension Plan of the Archdioceses of San Juan, Summary of the Description of the Plan," that indicates in its paragraph number 26 (Notice to Employees) the following:

As a participant of this plan, you have certain rights and protections under the "Employee Retirement [Income] Security Act of 1974. E.R.I.S.A. provides that the participants of the plan would have the following rights:

a.      To examine, without any cost, in the office of the administrator and other places, all the documents of the plan, including the insurance contracts, collective bargaining agreements and copy of all the documents submitted to by the plan to the Department of Labor of the United States, such as annual reports and description of the plan.

b.      To obtain copy of a detail version of the document of the plan or other information, through a written request address to the the administrator of the plan. The administrator could collect a reasonable amount for photocopying expenses.

c.      To receive a summary of the annual financial report of the plan. The law requires that the administrator of the plan provide a copy of this report to each participant.

d.    To obtain, once per year, one report of the total accumulated pension benefits and the non-forfeitable pension benefits (if there are any) on the closet date on which the benefits would become non-forfeitable. The plan could require that the report be requested in writing, but it must be furnished at no cost.

e.    To file a complaint in Federal Court, if any of the requested documents are not received within 30 days counted from the date in which they are requested by the participant, unless the materials are not sent for reasons beyond the control of the administrator. The Court could require that the administrator of the pay up to $100.00 for each day of delay until these materials are received by the participant.

In addition to establish rights for the participants of the plan, E.R.I.S.A. imposes obligations to the persons responsible for the operation of the pension plan. These persons are known as "fiduciaries" pursuant to the law. The fiduciaries are obliged to act exclusively for the benefit of the participants and must act prudently when they make decisions and exert duties under the plan. The fiduciaries that violate the rules imposed by ERISA could be replaced and could respond for any loss caused in detriment of the plan due to their acts.

Your employer could not discriminate against you to prevent that you enjoy a pension benefit, or to exercise a right under the rules of ERISA.

If any benefit is denied to you in an improper manner you have the right to file a complaint in Federal Court or in a State Court. If the fiduciaries are misusing the funds of the plan, you have the right to file a complaint in Federal Court or to request the intervention of the Department of Labor of the United States. If you win the case, the Court could, if it decides to, request to the defendant to pay the legal costs, including attorney's fees. If you lose the case, the Court could require that you pay the legal costs, including attorney's fees (for example, if the Court decides that your claim is frivolous).

And why did the Superintendence published and distributed another document with a similar title (dated September 1, 1993) among the plan participants and beneficiaries, which contain identical provisions.

Plaintiffs answers to these discovery requests were the following:

Interrogatory No, 17 is objected because the question presented is not relevant to the limited discovery allowed in the case at bar, The Honorable Court allowed discovery in relation to the threshold issue of whether the pension plan is a church plan under ERISA, as indicated in the Second Amended Complaint.   Plaintiffs do not state that the pension plan is not a church plan because of alleged statements or comments in any documents.  Furthermore, the parties cannot confer federal jurisdiction to an Article III Court merely because of what is allegedly stated in a document.

Interrogatory No. 18 is objected because the question presented is not relevant to the limited discovery allowed in the case at bar.  The Honorable Court allowed discovery in relation to the threshold issue of whether the pension plan is a church plan under ERISA, as indicated

in the Second Amended Complaint. Plaintiffs do not state that the pension plan is not a church plan because of alleged statements or comments in any documents.

Interrogatory No. 19 is objected because the question presented is not relevant to the limited discovery allowed in the case at bar. The Honorable Court allowed discovery in relation to the threshold issue of whether the pension plan is a church plan under ERISA, as indicated in the Second Amended Complaint. Plaintiffs do not state that the pension plan is not a church plan because of alleged statements or comments in any documents.

Answer to interrogatories number 17, 18 and 19, were objected by plaintiff as non-responsive. The information sought is clearly relevant to the church plan exemption issue. See *Curtis-Wright,* supra. **See Exhibit 3 of Docket No. 123, at page 6.**

Plaintiffs' request No. 21 reads as follows:

21.     Submit a list of all the documentary evidence you intend to preset at trial, regarding the threshold issue subject of analysis by the Court; with a brief but complete description of each document and the specific allegation you intend to prove with each and every one of them and provide a copy of all these documents.

Defendants' Answer to this request was the following:

21.     In relation to the threshold issue of whether the pension plan is a church plan, enclosed are the documents that will be used:

a.     Trust Deed No. 12, issued on November 26, 1979 before the Notary Public Antonio Suarez de la Torre.

b.     Plan Document of Archdiocese of San Juan Pension Plan.

c.     Pastoral Letter of the Episcopal Conference.

d.     Catholic Directory.

e.     DOL Opinion No. 85 - 32A, signed by Elliot Daniel, Acting Assistant Administrator for Regulations and Interpretations.

f.     Letters issued by the PBGC regarding coverage of Title IV of ERISA in Puerto Rico.

g.     Letter issued by the U.S. Department of Treasury on May 27, 2016 regarding tax exempt status of the Roman Catholic Church.

Plaintiffs objected Defendants' Answer to interrogatory number 21 as non-responsive.  **See Exhibit 3 of Docket No. 123, at page 6**.  Defendants failed to provide a brief but complete description of each document requested and the specific allegation they intended to prove with each and every one of them.

As discussed above, Rule 34 requires that objections to requests for production be made with specificity. This means that the objecting party has a duty to substantiate their claim that a certain discovery request lacks relevance. See *Sánchez–Medina*, 265 F.R.D. at 27.  Most of defendants' objections to plaintiffs' discovery requests were made alleging lack of relevance. However, defendants utterly failed to substantiate such claim.  Under these circumstances, plaintiffs understand that this Honorable Court should issue an order to compel discovery of the information and documents sought by them.

Furthermore, as previously indicated, some of the defendants, namely, Catholic Schools of the Archdioceses of San Juan Pension Plan and the Superintendence of Catholic Schools of the Archdioceses of San Juan, reached several agreements with defendants to properly respond to plaintiffs' discovery requests, as indicated in Exhibit 1 of the instant motion.  However, they chose to breach these agreements at their own peril.  And the rest of the defendants not only failed to respond to plaintiffs' previous Motion to Compel, but also failed to supplement their defective answers to plaintiffs' discovery requests.

Notwithstanding plaintiffs' multiple efforts to conduct a meaningful discovery in the instant case, defendants opted to obstruct such efforts.  Said conduct has hampered plaintiffs' ability to amend their pleadings, to take several depositions in this case, as previously scheduled by the Court, and to properly respond to defendants' Second Motion to Dismiss.

Plaintiffs are mindful that Hurricane María struck the Island on September 20, 2017, and that such event might have fettered defendants' ability to properly respond to plaintiffs' discovery, requests as previously agreed by the parties.  However, this Honorable Court should also take into account that close to eight months have gone by since plaintiffs served their First Set of Interrogatories and Request for Production of Documents and, as of today, defendants have not properly responded to such requests.  Defendants conduct have clearly caused an extraordinary delay in the proper resolution of this case.  As Honorable Judge Gelpí stated in an order entered on February 9, 2017 (Docket No. 91), "this case deals with pension plan entitlements sought by plaintiffs, which in many instances is the source of their livelihood."  Thus, defendants' contumacious behavior is clearly affecting plaintiffs' chances to seek redress from this Honorable Court to recover such source of livelihood.

Moreover, Rule 37(a)(4)(A) requires this Court to order defendants to pay plaintiffs reasonable expenses incurred in bringing the pending motion unless it finds that 1) the opposition to the motion to compel was "substantially justified", or 2) other circumstances make an award of expenses unjust. *American Hangar, Inc. v. Basic Line, Inc*., 105 F.R.D. 173, 176 (D.Mass.1985).  Plaintiffs move this Honorable Court to order defendants to pay reasonable expenses to plaintiffs for forcing them to file the instant motion.

On the other hand, on July 18, 2017, defendants filed a Second Motion to Dismiss.  A Response in Opposition to that Motion was due on August 1, 2017.  However, as indicated in plaintiffs First Motion to Compel (Docket No. 123), in order to properly address the issues presented by defendants in their Motion, plaintiffs need to complete the requested discovery and take important depositions originally scheduled for August 21-25, 2017.  After all, as this Honorable Court has already ruled, the ruling that it has to make regarding the applicability or not

of the church plan exemption raised by defendants is "an issue of law and it may also be fact intensive and the parties may have to create a record."   (**See Docket No. 59**)

Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment. *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, F.S.B., 958 F.2d 15, 18  (1st Cir. 1992). Exhibits attached to the complaint are properly considered part of the pleading "for all purposes," including Rule 12(b)(6). Fed.R.Civ.P. 10(c); *Blackstone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 195 n. 1 (1st Cir. 2001).  Additionally, the First Circuit Court has noted that "[w]hen ... a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Trust Co*., 137 F.3d 12, 16–17 (1st Cir. 1998); see also *Clorox Co. P.R. v. Proctor & Gamble Comm. Co*., 228 F.3d 24, 32 (1st Cir. 2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court " 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint' " (quoting *Shaw v. Digital Equip. Corp*., 82 F.3d 1194, 1220 (1st Cir.1996))).

At the discretion of the district court, a motion to dismiss may be converted to a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling.  Fed.R.Civ.P. 12(d); *Garita Hotel*, 958 F.2d at 18.

However, a Motion for Summary Judgment has to comply with provisions of Local Rule 56.   Local Rule 56(b) provides that (b) Supporting Statement of Material Facts.

> A motion for summary judgment shall be supported by a separate, short,
> and concise statement of material facts, set forth in numbered paragraphs, as to

which the moving party contends there is no genuine issue of material fact to be tried.  Each fact asserted in the statement shall be supported by a record citation as required by subsection (e) of this rule.

Defendants attached several documents to their Motion that are not part of the pleadings. Thus, if this Honorable Court would consider these documents to rule on such motion it has to convert it into a Motion for Summary Judgment.  But defendants' motion failed to comply with the provisions of Local Rule 56.  The First Circuit has "repeatedly ... emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." *Cabán Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is-and what is not-genuinely controverted.' " *Id.* (quoting *Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006)). Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." *Id.*  This is precisely what defendants did when they filed their Motion to Dismiss, (which is really a Motion for Summary Judgment).

As this Honorable Court knows, the deadline to complete discovery in the instant case was supposed to conclude on October 15, 2017 and the deadline to file dispositive motions on November 20, 2017.  Defendants clearly filed an untimely dispositive motion.  On the other hand, they presented unfounded objections to plaintiffs' discovery requests to curtail their ability to properly respond to said motion.

"A court faced with a disobedient litigant has wide latitude to choose from an armamentarium of available sanctions.  The entry of a default is one of these sanctions*."  Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 37 (1st Cir. 2012)

Plaintiffs move this Honorable Court to Order defendants to compel discovery as requested by plaintiffs and/or as agreed with some of them.  They further request this Honorable Court to

impose upon defendants' appropriate sanctions, including reimbursement of attorneys' fees for the filing of the instant motion, caused by defendants' vexatious behavior and admonish them that any subsequent failure to respond to plaintiffs' discovery requests could result in more stringent sanctions, including entry of default.  Furthermore, if this Honorable Court decides to entertain defendants' Summary Judgment Motion, disguised as a Motion to Dismiss, then plaintiffs respectfully request an extension of time of thirty (30) days counted from the moment of the new deadline to conclude discovery set by this Honorable Court, to oppose to said motion.  Finally, plaintiffs' respectfully request an extension of time of thirty (30) days, counted from the day that defendants respond to their discovery requests, to file an Amended Complaint to identify all the John Doe's of their Second Amended Complaint.

**WHEREFORE**, it is respectfully requested from this Honorable Court that it enter an order against defendants to compel discovery and grant plaintiffs all the additional reliefs requested herein.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this 6th day of December, 2017.

**CARLOS F. LOPEZ LAW OFFICE**
P.O. Box 8852
San Juan, P.R. 00910-0852
Tel. 787-273-0611
Fax 787-273-1540
E-Mail: **charlielopez@gmail.com**
        **cflopez@atriumoc.com**


s/ Carlos F. López
**Carlos F. López, Esq.**
USDC 126514

**AMUNDARAY, VILLARES
& ASSOCIATES, PSC**
P.O. Box 9023980
San Juan, PR00902-3980
Tel. (787) 273-0611
Fax (787) 273-1540
E-Mail: fjamundaray@aol.com
        fjamundaray@me.com


s/**FRANCISCO J. AMUNDARAY**
USDC-PR-208706