## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IVETTE M. MARTINEZ GONZALEZ<br>Plaintiffs<br><br>v.<br>CATHOLIC SCHOOL<br>Defendants<br><br>*Consolidated with:*<br><br>NORMA CARDOZA ESTREMERA and CANDIDA PEREZ ROBLES, on their behalf and on behalf of all the participants of the Pension Plan for the Employees of the Catholic School of the Archdiocese of San Juan<br><br>Plaintiffs<br><br>v.<br><br> COLEGIO PADRE BERRIOS, ACADEMIA SAN JOSE, PENSION PLAN FOR CATHOLIC SCHOOL OF THE ARCHDIOCESE OF SAN JUAN, BOARD OF TRUSTEES, et. Al.<br><br>Defendants | Case Civil No.  16-2077<br><br><br><br><br><br>Case Civil No.  16-2318<br><br><br>COMPLAINT:<br>ERISA § 502<br>Treas. Reg. § 1.401(a)-50<br>Tittle II of ERISA<br>IRC 501(a), 414(e), 410(d)<br>US Common law<br>PRIRC  2011 |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

**TO THE HONORABLE COURT:**

**COME NOW**, plaintiffs, through their undersigned attorney and hereby submit this

Motion for Partial Summary Judgment seeking a determination that the Pension Plan for the

Catholic Schools of the Archdiocese of San Juan Pension Plan (the "Plan") is covered by the

1

Employee Retirement Income Security Act of 1974 ("ERISA");see **Docket 17-4** , *Plan Rules Document.*

INTRODUCTION

This is a civil action brought pursuant to §502 of ERISA, 29 U.S.C. § 1132, to obtain remedies available ERISA and US Common law for collection of benefits, violation of defendants fiduciary duty, imposition of ERISA § 502(c) penalties, collection of delinquent contributions under ERISA § 515, 29 USC § 1145 and § 502(g) attorney fees.  Defendants are terminating a defined benefit pension plan wrongfully, without providing required notices to participants, in violating their fiduciary duty to disclose the management of the Plan.

Defendants allege that the Plan has a church plan status under ERISA § 4(b)(2), 29 U.S.C. 1003 and claims the § 4(b)(2) church plan exemption ("CPE")  under ERISA.

Section 4(b)(2) of ERISA, 29 U.S.C. 1003(b)(2)

Section 4 of ERISA, 29 U.S.C. 1003 provides:

Coverage

(a) *Except...*

(b) *The provisions of this subchapter shall not apply to any employee benefit plan if--*
*(1)...*
*(2) such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of title 26;*

Plaintiffs' position is that the Plan is not covered by the CPE because such exemption is not the employee benefit plan ("ebp") described in Section 4(b)(2), 29 U.S.C. 1003(b)(2), which ERISA intends to exempt.

The Plan does not meet Section  401(a) requirements because it trust was created  in Puerto Rico and there is no election  made  under 1022(i)(2)  to  have  the  Plan trust

treated as a domestic trust for purposes of qualifying under Section 401(a). The CPE is a federal exemption subject to IRC 401(a) provisions. In this regard, the CPE may only be granted to qualified plan subject to Title II of ERISA and meeting the 401(a) requirements stated in the IRC as September 1, 1974. Only qualifying employee benefit plans that comply with such requirements under IRC Section 401 (a) and therefore, are subject to the Tittle II of ERISA , qualify for the CPE ( whether by been organized in the US . or by electing IRC coverage under Section 1022(i)(2). There is no local statutory provisions contained in the Puerto Rico Internal Revenue Code of 2011 (PRIRC-2011) such as the CPE.

## RELEVANT FACTS

On or about 1979, the Superintendent of Catholic School of the Archdiocese of San Juan (the "SP" ) and Archdiocese of San Juan (the "Archdiocese") created and developed the Plan, offered as a multiemployer qualified defined benefit plan for the schools forming part of the Archdiocese. See Plan rules and trust agreement.

Several employers in Puerto Rico (the "Participant Employers") adopted the Plan as offered by the Archdiocese. The Plan has been established and maintained by the Participant Employers since that date. The plan administrator has been Defendant Archdiocese of San Juan.

Plaintiffs Norma Cardoza ("Mrs. Cardoza") and Candida Perez Robles ("Mrs. Candy") are vested participants entitled to pension benefits under the Plan. They accrued such benefits during their employment with Academia San Jose ("ASJ") and Colegio Padre Berrios ("CPB"), here and after also referred to as the "Schools").

On 2016, the Archdiocese, announced the plan termination, alleging they can terminate the Plan at any moment and without any reason. That the Plan was a "church plan" under ERISA. In addition to terminate the Plan, Defendants are intending to convert the

Plan into a defined contribution plan, without preserving Plaintiffs' accrued benefits under the Plan. In this case the Plan Administrator (the "PA") has failed to secure the qualified and church status for the Plan.

a. Not all Participant Employers obtained the 501 exemption required by ERISA

The Plan Administrator has failed to qualify the Plan for the CPE because not all Participant Employers obtained a 501 exemption letter as required to obtain the CPE.

As required under the group 501 exemption provided by Defendants to sustain its 501 exemption, each subordinate organization must obtain its own EIN; See *Exhibit 3*, *Letter of May 27, 2016 regarding Group Exemption number 0928;* **Docket 17-1** .

Defendants may not use  the EIN of the Catholic  church as established by  Memorandum to Subordinate organizations of June 1, 2016 ; See *Exhibit 6 .*

The lack of compliance by such defendants with the group exemption conditions disqualify  the subordinate organization to claim the CPE.

b.      The SP is an office of the Archdiocese with no individual legal existence

The SP is an office of the Archdiocese that no not have individual legal existence.

SP was not properly designated by the Archdiocese to act on behalf of the Archdiocese.

It is not an entity with legal existence by its own as a separate entity from the Archdiocese.

SP lacked capacity and authority to appear in the execution of the Plan trust; See **Docket 17-2,** *Pastoral Letter in regard to the role of the Superintendent.*

SP has not the capacity and authority delegated by the Archdiocese to appear by its own and execute the trust agreement on behalf of the church.

c. The Plan had to make the 1022(i)(2) election to comply with 401(a) requirements

The election under ERISA Section 1022(i)(2) is required for the Plan if intends to qualify under IRC Section 401(a). Section 1022(i)(2)(A) provides that if "the administrator of a pension, profit sharing or stock bonus plan which is created or organized in Puerto Rico elects … any trust forming part of such plan shall be treated as a trust created or organized in the United States for purposes of Section 401(a)." The sponsor of Puerto Rico plans has this election available under ERISA 1022(i)(2). Through their election under ERISA §1022(i)(2) administrators of qualified plans in Puerto Rico have §414(e) federal exemption extended to their plan in Puerto Rico. This subject to the IRS jurisdiction.

PGBC requires that the Puerto Rico plans elect under 1022(i)(2) in order to have ERISA Tittle 4 applied to the plan termination process.

    d.    <u>The Plan is not the employee benefit described in Section 4(b)(2).</u>

The Plan trust is not a domestic trust subject to Tittle II of ERISA.  It is a foreign trust, not a US Person under <u>26 U.S. Code § 7701 (30) and (31)</u> – Definitions

The Plan may not claim the CPE because Section 4(b)(2) covers only qualified church plans that are  subjects to 401(a) requirements under title II of ERISA.

ERISA 4(b)(2) is a federal exemption without local similar provision under PRIRC-2011.

    e.    <u>There is no provision offering PRIRC a local CPE for church plan</u>

There is no a church plan exemption similar to § 414(e) provided under 2011PRIRC to qualified plans in Puerto Rico.

ISSUES

    a)  Whether Colegio Padre Berrios lack of 501 exemption letter impairs the Plan to claim the CPE under 4b2?

    b)  Was the Plan properly established and maintained by the church, affiliated or primary purpose organization?

c) Was the Plan required to elect under 1022(i)(2) as a condition to comply with 401a requirements?

d) Is 401(a) compliance required to obtain the federal exemption for church plans under Section 4(b)(2) of ERISA?

e) Whether the Plan is the employee benefit plan described in Section 4(b)(2) church plan description?

f) Is there any provision under PRIRC granting the Plan church plan exemption?

SUMARY OF ARGUMENTS

There are several reasons that impair the PA to claim the ERISA church plan exemptn and to terminate the Plan, as proposed by the Plan Administrator.

The Plan does not meet all the conditions to obtain the church plan status under ERISA  section 4(b)(2):

First, not all Participant Employers, like CPB have 501 exemption letter. CPB does not form part of the group exemption provided by the PA.

Second, the Plan was not established by the church.

The Plan was not established by the church because the Superintendent of Catholic School was not properly delegated by the Archdiocese or Diocesan to set up a church retirement church plan.

Third, the Plan does not comply with IRC 401(a) requirements for qualified plans (as in effect on September 1, 1974).Neither, it is subject to Tittle II of ERISA. That is required to obtain the CPE under 4(b)(2), and

Fourth, the Plan is not an employee benefit plan that qualify for the CPE under Section 4(b)(2) because it is  a foreign trust, which is not a US person, under  section 7701(a) (30) and (31).  Based on the above the Plan was not intended to

be qualified under IRC Section 401(a) and does not qualify for the 4(b)(2) exemption.

## I.   STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate and shall be rendered forthwith if the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56 (c) of the Federal Rules of Civil Procedure; se also *Cortes –Irizarry v. Corporación Insular de Seguros, 111 F. 3d 184, 187 (1st Cir. 1997); Rivera-Flores v. Bristol Myers Squibb Caribbean, 1997 WL 194803, (1st Cir. 1997); McCarthy v. Northwest Airlines, Inc., 56 F. 3d 313, 315 (1st Cir. 1995).*

The moving party for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)* In order to succeed, "the moving party must show that there is an absence of evidence to support the non-moving parties position". *Rogers v. Fair, 902 F. 2d 140, 143 (1st Cir. 1990)* If this showing is made, the burden then shifts to the non-moving party who in order to defeat the motion for summary judgment, "must demonstrate the existence of a trial worthy issue as to some material fact. A fact is "material" if it potentially could affect the suit's outcome". *Cortes –Irizarry v. Corporación Insular de Seguros, supra at 187; Vega-Rodriguez v. Puerto Rico Telephone Company, 110 F. 3d 174, 178 (1st Cir. 1997)*

The non-moving party cannot rely on mere allegations. *Anderson v. Liberty Lobby, Inc., supra; Maldonado-Denis v. Castillo-Rodríguez, 23 F. 3d 570 (1st Cir. 1994); Pagano v. Frank, 983 F.2d 343, 348 (1st Cir. 1993). A party opposing a motion for summary judgment must rebut*

the motion with definite, competent evidence that demonstrates the existence of an authentic dispute". _McCarthy v. Northwest Airlines, Inc.,_ supra. at 315; _Mesnick v. General Electric Co.,_ _950F. 2d 816, 822 (1st Cir. 1991)._ "There must be evidence on which the jury could reasonably find for the plaintiff." _Anderson v. Liberty Lobby, Inc., supra._

When presented with a motion for summary judgment, the court should " pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether a trial is actually required". _Cortes –Irizarry v. Corporación Insular de Seguros, supra; Vega-Rodríguez_ _v. Puerto Rico Telephone Company, supra.;Rivera-Cotto v. Rivera, 38 F. 3d 611, 613 (1st Cir._ _1994); Wynne v. Tufts Universal School of Medicine, 976 F.2d 791, 794 (1st Cir.1992), Cert._ _Denied, 507 U.S. 1030 (1993)._

Plaintiffs' Statement of Uncontested Material Facts and Memorandum of Law demonstrate that there is no genuine issue of material fact in controversy as to  the  fact that he Plan does not meet the  description of a church  plan  Section 4(b)(2).

Plaintiffs, understand that certain material facts are not in controversy and allow for a partial judgment that the Plan is covered by ERISA, but not exempted under  Section 4(b)(2).

## II.   DISCUSSION OF ARGUMENS

### a.   Lack of 501 exemption for several Participant Employers

TITLE 26 – IRS Regulation 1.414(e) - 1 – c. Definition of church plan.

(a)      General

rule… (b)…

(c) Plans of two or more employers. The term church plan _does not include a plan_ _which, during the plan year, is maintained by two or more employers unless (1)_

*Each of the employers is a church that is exempt from tax under section 501(a)*, and (2) With respect to the employees of each employer, the plan meets the provisions of paragraph (b)(2)(ii) of this section or would be determined to be a church plan based on all the facts and circumstances described in paragraph (b)(2)(iii) of this section.

SP, CPB ASJ have not sustained their 501 exemption, individually or as subordinate of the group exemption (Docket 17-1) they provide to sustain their 501 exemption.

See *Memo from the Office of the General Counsel, United States Conference of Catholic Bishops ("USCCB"), June 1,2016, regarding Subordinate Organizations under USCCB Group Ruling (GEN:0928),* **Exhibit 4.**

In this case, none of the subordinates in the group exemption, ASJ and SPA, nor CPB, have   sustained their 501 exemption, individually or as subordinate member of the group exemption (Docket 17-1).

CPB is not in the 2016 Catholic Church Directory (Docket 17-3).

CPB is not a subordinate within the meaning of the Group Ruling provided by Defendants. (Docket 17-3). It neither has its own EIN, as required in the last paragraph of the IRS letter of May 27, 2016.

Discovery is necessary as to whether such defendants filed form 990 with the IRS and reported their activities as required  under the group exemptions; see Rev. Proc. 80-27, 1980-1 C.B. 677, Rev. Proc. 75-50, 1975-2 C.B. 834 and Rev. Rul. 71-447, 1971-2 C.B. 230. Subordinates must file form 990 to the IRS with its own EIN as a condition to claim the church plan exemption under ERISA;

The Superintendence of Catholic School ("SP") does not have a separate legal existence apart from the Archdiocese. Neither has a separate EIN as required by IRS to each subordinate of the group exemption submitted by defendants (Docket 17-1).

As required, each subordinate organization must use its own EIN, not the EIN of the central organization, in all filings with the IRS; see Docket 17-1 at page 2.

ASJ does not have an individual EIN as required to subordinate entities forming part of the Group exemption.

There is no EIN for the Superintendent.  No EIN was indicated for the Superintendent in the SPD's; see Exhibits 1 and 2.

b.  <u>SP has no authorized legal capacity to act on behalf of the church</u>

The Plan was not properly established and maintained by the church, affiliated or primary purpose organization.

c.  <u>No election under Section 1022(i)(2) for the Plan</u>

Section 1022(i)(2) requires an affirmative election by the Plan administrator at the commencement of the Plan. There is no election made under ERISA 1022(i)(2) to have the plan trust treated as a domestic trust, therefore, the Plan fails to meet such Section 401(a) requirement. A foreign trust like the Plan trust, that forming part of the Plan does not meet the 401(a) requirements of IRC as of September 1, 1974  may not claim the CPE.

d.  <u>The Plan  is no  the employee benefit plan described in  Section 4(b)(2)</u>

ERISA is a federal statute composed of four (4) separate titles, of which only Tittle I and Tittle III apply to Puerto Rico plans, if there is no 1022i2 election. If there is the election

made, then Tittle II and IV do apply to the trust located in Puerto and will regulate the operation of the plan.

Unlike ERISA 10022(1)(1), which provides an statutory automatic extension of the 501 exemption to the plan trust, Section 1022(i)(2) requires the intention and the affirmative election by the Plan administrator to have the plan trust considered as created in the United States. This   subjects the Plan  to IRC Section  401 a & subsequent provisions (Title II of ERISA), which allows the Plan trust to be consider a domestic entity under IRC.

It gives the PR plans the option to be considered  a domentic trust  under IRC.

In this case, there is no election made under Section 1022(i)(2) by any of the defendants.

That is required as a condition to obtain the CPE provided under Section 4(b)(2) of ERISA.

### e.  Section 4(b)(2) is a federal exemption

The Plan  trust does not  comply with the *situs* requirement, it is not  a domestic trust for purposes of Section 401(a) and do not qualify for the   CPE. The Plan does not meet the description of an ERISA 4(b)(2) church plan exempted from ERISA provisions because it is a foreign trust not meeting the qualification requirements under IRC 401(a). Section 4(b)(2) is a federal exemption which requires compliance with ERISA Title II, IRC requirements, such as plan qualification under IRC 401a.

To be a qualified plan under IRC 401a the plan trust has to be created in the United States or, if the trust was created in PR, the plan administrator must elect under Section 1022(1)(2).

### f.  No CPE under PRIRC

The Puerto Rico Internal Revenue Code of 2011 does not provide qualified plans with an exemption similar to IRC 414 (e**)**. There is no a church plan exemption similar to § 414(e) provided under Puerto Rico tax statutes.

11

The Puerto Rico Internal Revenue Code of 2011 ("2011PRIRC") does not provide qualified plans in Puerto Rico with an exemption for ERISA church plans, similar to IRC § 414 (e).

g.   Non compliance with  federal church plan requirements

The failure to comply with  IRC Section 401(a) requirements disqualify the Plan to be treated as a domestic trust  and  therefore impair the PA to  claim the CPE under ERISA 4(b)(2). The church plan federal exemption under Section 4(b)(2) of ERISA  is available only to qualified plans that are subject to Tittle II of ERISA and meet the  IRC 401(a)  qualification requirements as of September1, 1974. The Plan failed to maintain the plan qualification under the Puerto Rico Internal Revenue Code, which is necessary to process  the Plan  termination as required by the Plan rules document.

## III.   MEMORANDUM OF LAW

The Plan is claiming the church plan exemption under Section 4(b)(2) of ERISA:

a.   Sec. 4 of ERISA

29 U.S. Code § 1003 - Coverage

**Coverage**

**(a) In general -** Except as provided in subsection (b) or (c) and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—
**(1)** by any employer engaged in commerce or in any industry or activity affecting commerce; or
**(2)….**
**(3)…**

**(b) Exceptions for certain plans.** The provisions of this subchapter shall not apply to any employee benefit plan if—
**(1)** …
**(2)** such plan is a church plan (as defined in section 1002(33) of this title) with respect to which no election has been made under section 410(d) of title 26;

**(3)…** .
**(4)…** .
**(5)** …

**(c) Voluntary employee contributions to accounts and annuities**

**Definition of Church Plan under ERISA Section (33)**
**(A)** The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26.
**(B)** The term "church plan" does not include a plan—
**(i)…**
**(ii)**…

**(C)** For purposes of this paragraph—

**(i)** A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the **principal purpose or function** of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

**(ii)** The term employee of a church or a convention or association of churches includes—
**(I)…**
**(II)** an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of title 26 and which is controlled by or associated with a church or a convention or association of churches; and
**(III)..**

**(iii)** A church or a convention or association of churches which is exempt from tax under section 501 of title 26 shall be deemed the employer of any individual included as an employee under clause (ii).

**(iv)** …
**(v)** …

      b. <u>IRC Section 1022(i)(1)</u>

       IRC § 501(a)**-** Section 1.501(a)-1(e) (ERISA 1022(1)(1).

       IRC Section 1022(i)(1) applies automatic to Puerto Rico qualified plans. It provides that,

**for purposes of § 501(a),** any trust forming part of a pension, profit-sharing, or stock bonus plan

all the participants of which are residents of Puerto Rico is treated as an organization described in § 401(a), and therefore generally exempt from income taxation, if the trust both forms part of a pension, profit-sharing, or stock bonus plan and is exempt from income tax under the laws of Puerto Rico. For purposes of section 1022(i) of ERISA, a resident of Puerto Rico is either a bona fide resident of Puerto Rico or a person who performs labor or services primarily within Puerto Rico, regardless of residence for other purposes, and a participant is a current employee who is not excluded under the eligibility provisions of the plan. Section 1.501(a)-1(e). **Section 1022(i)(1) of ERISA does not extend qualified status under § 401(a) to a plan, favorable treatment under § 402(a) regarding the taxation of distributions to a participant, or deductions for contributions under § 404(a) to an employer.** Section 1022(i)(1) was enacted by Congress in order to provide plans, qualified only under the Puerto Rico Code, with favorable tax treatment with respect to their United States investments to enable those plans to diversify their investments.

     c.  <u>Rev. Proc. 2004-37 and Rev. Rul. 2008-40</u>

Such rulings interpret Section 1022(i)(1) of ERISA – which provides that, "for purposes of section 501(a)," a trust forming part of plan all the participants of which are residents of Puerto Rico and which is exempt from Puerto Rico tax, "shall be treated as an organization described in section 401(a)" –**as not extending qualified status under section 401(a) (1) to the plan itself**, (2) favorable tax treatment under section 402(a) for distributions to participants, or (3) favorable treatment under section 404(a) for deductions of employer contributions.

     d.  <u>26 U.S. Code § 401</u>

In this case, the Plan failed to qualified under Section 401(a) because the Plan was not ***created or organized in the United States*** as required under § 401. It states:

-Qualified pension, profit-sharing, and stock bonus plans

(a) Requirements for qualification A trust **created or organized in the United States** and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

    e.  <u>ERISA Section 1022(i)(2)</u>- 26 CFR 1.401(a)-50

The Plan did not elect under 1022 (i)(2) to have the Plan trust treated as a domestic trust under IRC. It states:

    26 CFR 1.401(a)-50 - <u>Puerto Rican trusts; election to be treated as a domestic</u> <u>trust</u>.

**§ 1.401(a)-50 Puerto Rican trusts; election to be treated as a domestic trust.**

    **(a)***In general.* Section 401(a) requires, among other things, that a trust forming part of a pension, profit-sharing, or stock bonus plan must be created or organized in the United States to be a qualified trust. Section 1022(i)(2) of the Employee Retirement Income Security Act of 1974 (ERISA) ( 88 Stat. 942) provides that trusts under certain pension, etc., plans created or organized in Puerto Rico whose administrators have made the election referred to in section 1022(i)(2) are to be treated as trusts created or organized in the United States for purposes of section 401(a). Thus, if a plan otherwise satisfies the qualification requirements of section 401(a), any trust forming part of the plan for which an election is made will be treated as a qualified trust under that section.

**(b)***Manner and effect of election.* A plan administrator may make an election under ERISA section 1022(i)(2) by filing a statement making the election, along with a copy of the plan, with the Director's Representative of the Internal Revenue Service in Puerto Rico. The statement making the election must indicate that it is being made under ERISA section 1022(i)(2). The statement may also be filed in conjunction with a written request for a determination letter. If the election is made with a written request for a determination letter, the election may be conditioned upon issuance of a favorable determination letter and will be irrevocable upon issuance of such letter. Otherwise, once made, an election is irrevocable. It is generally effective for plan years beginning after the date it has been made. However, an election made before March 3, 1983 may, at the option of the plan administrator at the time he or she makes the election, be considered to have been made on any date between September 2, 1974, and the actual date of the election. The election will then be effective for plan years beginning on or after the date chosen by the plan administrator.

**(c)***Annuities, custodial accounts, etc.* See section 401 (f) for rules relating to the treatment of certain annuities, custodial accounts or other contracts, as trusts for purposes of section 401(a).

**(d)***Source of plan distributions to participants and beneficiaries residing outside the United States.* Except as provided under section 871(f) (relating to amounts received as an annuity by

15

nonresident aliens), the amount of a distribution from an electing plan that is to be treated as income from sources within the United States is determined as described below. The portion of the distribution considered to be a return of employer contributions is to be treated as income from sources within the United States in an amount equal to the portion of the distribution considered to be a return of employer contributions multiplied by the following fraction:

**...**

**...**

**...**

 The Pension Benefit Corporation ("PGBC" ) requires that the Puerto Rico plans elect under 1022(i)(2) in order to have ERISA Tittle 4 applied to the plan termination process.

 f)  <u>26 U.S. Code § 7701 </u>– Definitions

  US person - IRC 7701

  (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
(1) Person
The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.
(2) …

  (30) <u>United States person</u>. The term "United States person" means—
(A) a citizen or resident of the United States,
(B) a domesticpartnership,
(C) a domesticcorporation,
(D) any estate (other than a foreign estate, within the meaning of paragraph (31)), and
(E) any trust if—
(i) a court within the United States is able to exercise primary supervision over the administration of the trust, and
(ii) one or more United States persons have the authority to control all substantial decisions of the trust.

  (31) Foreign estate or trust
(A) Foreign estate
The term "foreign estate" means an estate the income of which, from sources without the United States which is not effectively connected with the conduct of a trade or business within  the United States, is not includible in gross income under subtitle A.
(B) Foreign trust
The term "foreign trust" means any trust other than a trust described in subparagraph (E) of paragraph (30).

  <u>26 CFR 301.7701-7 </u>- Trusts - domestic and foreign.

16

§ 301.7701-7 Trusts - domestic and foreign.

(a)In general.

(1) A trust is a United States person if -

(i) A court within the United States is able to exercise primary supervision over the administration of the trust (court test); and

(ii) One or more United States persons have the authority to control all substantial decisions of the trust (control test).

(2) A trust is a United States person for purposes of the Internal Revenue Code (Code) on any day that the trust meets both the court test and the control test. For purposes of the regulations in this chapter, the term domestic trust means a trust that is a United States person. The term foreign trust means any trust other than a domestic trust.

(3)… Except as otherwise provided in part I, subchapter J, chapter 1 of the Code, the taxable income of a foreign trust is computed in the same manner as the taxable income of a nonresident alien individual who is not present in the United States at any time. Section 641(b). Section 7701(b) is not applicable to trusts because it only applies to individuals. In addition, a foreign trust is not considered to be present in the United States at any time for purposes of section 871(a)(2), which deals with capital gains of nonresident aliens present in the United States for 183 days or more.

(b)Applicable law. The terms of the trust instrument and applicable law must be applied to determine whether the court test and the control test are met.

(c)The court test -

(1)….

(2)….
(3)Definitions. The following definitions apply for purposes of this section:
(i)Court. The term court includes any federal, state, or local court.
(ii)The United States. The term the United States is used in this section in a geographical sense. Thus, for purposes of the court test, the United States includes only the States and the District of Columbia. See section 7701(a)(9). Accordingly, **a court within a territory or possession of the United States or within a foreign country is not a court within the United States.**
(iii)Is able to exercise. The term is able to exercise means that a court has or would have the authority under applicable law to render orders or judgments resolving issues concerning administration of the trust.
(iv)….

(4)…
(5)…

(d)Control test -

(1)Definitions -

(i)United States person.

(ii)…

(iii)…

(iv)Safe harbor for certain employee benefit trusts and investment trusts. Notwithstanding the provisions of this paragraph (d), the trusts listed in this paragraph (d)(1)(iv) are deemed to satisfy the control test set forth in paragraph (a)(1)(ii) of this section, provided that United States trustees control all of the substantial decisions made by the trustees of the trust -
      (A) A qualified trust described in section 401(a);
(B) ………..
(C)………..


 Finally, in regard to 26 U.S. Code § 410(d)  it states as follow:

**(d) Election by church to have participation, vesting, funding, etc., provisions apply**
**(1) In general**
If the church or convention or association of churches which maintains any church plan makes an election under this subsection (in such form and manner as the Secretary may by regulations prescribe), then the provisions of this title relating to participation, vesting, funding, etc. (as in effect from time to time) shall apply to such church plan as if such provisions did not contain an exclusion for church plans.

**(2) Election irrevocable**
An election under this subsection with respect to any church plan shall be binding with respect to such plan, and, once made, shall be irrevocable.

**§ 11.410-1 Election by church to have participation, vesting, funding, etc., provisions apply.**

**(a)***In general.* If a church or convention or association of churches which maintains any church plan, as defined in section 414(e), makes an election under this section, certain provisions of the Code and title I of the Employee Retirement Income Security Act of 1974 (the "Act") shall apply to such church plan as if such plan were not a church plan. The provisions of the Code referred to are section 410 (relating to minimum participation standards), section 411 (relating to minimum vesting standards), section 412 (relating to minimum funding standards), section 4975 (relating to prohibited transactions), and paragraphs (11), (12), (13), (14), (15), and (19) of section 401(a) (relating to joint and survivor annuities, mergers and consolidations, assignment or alienation of

benefits, time of benefit commencement, certain social security increases, and withdrawals of employee contributions, respectively).

**(b)***Election is irrevocable.* An election under this section with respect to any church plan shall be binding with respect to such plan and, once made, shall be irrevocable.

**(c)***Procedure for making election -*

**(1)***Time of election.* An election under this section may be made for plan years for which the provisions of section 410(d) of the Code apply to the church plan. By reason of section 1017(b) of the Act section 410(d) does not apply to a plan in existence on January 1, 1974, for plan years beginning before December 31, 1975. Section 1017(d) of the Act permits a plan administrator to elect to have certain provisions of the Code (including section 410(d)) apply to a plan before the otherwise applicable effective dates of such provisions. See § 420.0-1 of the regulations in this chapter (Temporary Regulations on Procedure and Administration under the Employee Retirement Income Security Act of 1974). Therefore, an election under section 410(d) of the Code may be made for a plan year beginning before December 31, 1975, only if an election has been made under section 1017(d) of the Act with respect to that plan year.

**(2)***By whom election is to be made.* The election provided by this section may be made only by the plan administrator of the church plan.

**(3)***Manner of making election.* The plan administrator may elect to have the provisions of the Code described in paragraph (a) of this section apply to the church plan as if it were not a church plan by attaching the statement described in subparagraph (5) of this paragraph to either (i) **the annual return required under section 6058(a)** (or an amended return) with respect to the plan which is filed for the first plan year for which the election is effective or (ii) a **written request for a determination letter relating to the qualification of the plan under section 401(a)**, 403(a), or 405(a) of the Code and, if trusteed, the exempt status under section 501(a) of the Code of a trust constituting a part of the plan.

**(4)***Conditional election.* If an election is made with a written request for a determination letter, the election may be conditioned upon issuance of a favorable determination letter and will become irrevocable upon issuance of such letter.

**(5)***Statement.* The statement described in subparagraph (3) of this paragraph shall indicate (i) that the election is made under section 410(d) of the Code and (ii) the first plan year for which it is effective.

The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purpose of, and prevent the abuse of, this subparagraph .

## IV.    CONCLUSION

ERISA 4(b)(2) is a federal exemption without local similar provision under PRIRC-2011. It is a foreign trust, not a US Person. The Plan trust is not a domestic trust subject to Tittle II of ERISA.

Section 4(b)(2) covers only qualified church plans that are  subjects to 401(a) requirements under title II of ERISA. The Plan may not claim the CPE because the Plan is not the employee benefit described and covered under Section 4(b)(2).  There is no similar exemption under PRIRC; no local exemptions for church plan

In this case the PA did not secure the 4(b)(2) church plan exemption under the option available under Section 1022(1)(2). Such section  gives  qualified pension benefit trusts   created in Puerto Rico  the option to be treated as created in the US in order to meet the 401(a) qualification  requirement that the plan has to be created or organized in the United States. The PA  did not make the election available for Puerto Rico under ERISA 1022(i)(2) to seek plan qualification under Tittle II of ERISA.

This District Court has jurisdiction to determine over the mechanism to implement ERISA Section 1022(i)(2) provision, subject to the jurisdiction of the Secretary of Treasury, as required under Section  4(b)(2).  This includes the legality of the Plan termination, as proposed be Defendants. Such termination also requires the approval of the Puerto Rico Secretary of Treasury as part of the federal procedure provided under ERISA to terminate qualified defined benefit plans. The lack of compliance with IRC Section 401(a) requirements impairs the Plan to claim the ERISA church plan exemption under ERISA 4(b)(2).

The church plan federal exemption under Section 4(b)(2) of ERISA  is available only to qualified plans that are subject to Tittle II of ERISA and meet the  IRC 401(a)  qualification requirements as of September1, 1974.

The Plan Administrator did not elect under ERISA 1022(i)(2) necessary for the qualification under Section 401(a), and  failed to meet  several other qualification requirements.

ERISA Tittle II provides for the IRC 401(a) qualification requirements and the administration of the CPE.  In this case, the Plan administrator did not make the election available for Puerto Rico under ERISA 1022(i)(2) to be subject to Tittle II of ERISA and the church plan provisions  under ERISA 4(b)(2) & 3(33)   and IRC 410(d) & 414 (e) or the election under IRC 410(d)  are  unavailable to the Plan. The Plan Administrator did nor elect to be treated as created in the US in order to meet such requirement and the Plan trust does not comply with 401(a) qualification requirements.

Through their election under ERISA §1022(i)(2)  the Plan administrator  would have made the plan eligible to  have the CPE  applicable  in Puerto Rico. Due to the lack of such election, the Plan  does not falls within the definition of  employee benefit plan  under ERISA §4(b)(2), 29 USC §1003(b)(2). If the Plan administrator's intention was to have the Plan exempt from  the Post-ERISA qualification requirements imposed by Tittle II of ERISA, the administrator should have made the ERISA § 1022(i)(2) election. The Plan Administrator had this option, but did not elected to have the church plan exemption available to the Plan. Congress intention was to give Puerto Rico plans the option under the IRC to be considered foreign trust or domestic trust subject to the ERISA provisions contained within Tittle II of ERISA. Therefore, the Plan may not claim the CPE under ERISA.

RESPECTFULLY SUBMITTED.

HEREBY CERTIFY that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

In San Juan, Puerto Rico, this 20 day of December, 2017.

**s**/LuisVivaldi  Oliver
**Luis Vivaldi Oliver**
U.S.D.C.P.R. 214413
Attorney for Plaintiff
P.O. Box 191340
San Juan, P.R. 00919
Tel. (787) 413-2218
*vivaldipension@hotmail.com*
